378 P.2d 198

**Edward C. GERRY, Plaintiff-Cross Defend-
ant and Appellant-Cross Respondent,**

**v.**

**James H. JOHNSTON, Defendant-Cross
Plaintiff and Respondent-
Cross Appellant.**

No. 9012.

Supreme Court of Idaho.

Jan. 21, 1963.

William A. Reagan, J. Ray Cox, Jr., Coeur d'Alene, for respondent.

Thomas A. Mitchell, Coeur d'Alene, for appellant.

McQUADE, Justice.

Gerry commenced this action to recover damages from Johnston alleging that Johnston had wrongfully cut timber on his land. Johnston filed a cross complaint seeking specific performance of an alleged oral contract between Gerry and Johnston for the sale of certain timber on land owned by Gerry. In the alternative, Johnston sought damages occasioned by the alleged breach of the oral contract by Gerry.

A trial was had and each of the parties made a motion for a directed verdict. The trial judge granted each motion. Defendant Johnston moved for a new trial upon his cross-complaint. This motion was granted as to issues of loss of profits and monies expended in part performance of the contract. Plaintiff, Gerry, did not request a new trial. The subsequent trial was had only upon issues within the purview of Johnston's cross-complaint.

Gerry was the owner of a large tract of standing timber in the Twin Lakes area of Northern Idaho. Johnston was an independent contract logger. For the purpose of discussing logging of his lands, Gerry, early in 1955, sought out Johnston. Together they visited a particular area on Parnell Creek near Twin Lakes. Subsequent to this visitation the two men reached an agreement whereby Johnston was to log certain designated lands. To reach the timber with the logging equipment it was necessary to improve an existing road and construct a new roadway.

In April of 1955 the parties agreed that areas on the east side of Parnell Creek would be logged. Under this oral agreement Johnston claims he was to log all of the merchantable timber. Johnston testified that he logged this area until July of

1955 when a problem of right-of-way over a third party's land arose.

Gerry recalls the agreement differently, and claims that the parties agreed Johnston could cut timber at Gerry's discretion, subject to being stopped at any time.

Johnston asserts that in July or early fall of 1955, a third agreement was entered into between the parties by which Gerry agreed that Johnston could log all merchantable timber in certain prescribed areas. Johnston logged on these lands until November 5, 1956. There was no time limitation by the various agreements of the parties. Gerry insists Johnston gave assurance that he would be out of the area by July 1, 1956. Johnston's version is that Gerry on November 5th advised the lands had been sold and asked Johnston to discontinue logging for a couple of days for Gerry to work out arrangements with the buyer, and thereupon Johnston discontinued operations.

Johnston sought loss of profits and damages by way of reimbursement for roads constructed and improved pursuant to the oral agreements. On the item of roads it was Johnston's theory that this constituted part performance of the agreement. Johnston testified he made these improvements in anticipation of harvest of about one and a half million board feet of timber which was left at the time he was required to stop operations. Although he was unable to testify with preciseness concerning the amount expended upon the roads, nevertheless, Johnston estimated the roads cost him on an allocable basis about $3.41 per thousand board feet of all merchantable timber. Johnston also estimated he built 7.23 miles of new road and rebuilt 9.76 miles of old road. He asked damages in the sum of $5,528.36, on his theory that such sum constituted the allocable share of all road costs in relation to the remaining timber.

At the conclusion of the evidence the trial court granted a motion for a directed verdict in favor of Gerry on the issues of loss of profits, expenses incurred in logging timber cut but not sold, and anticipated profits therefrom. The court instructed the jury that the maximum amount of their verdict for road expense could not exceed $5,528.36. The jury returned a verdict in favor of Gerry on loss of profits as directed by the court and a verdict in favor of Johnston for road expense in the amount of $5,528.36.

Thereafter the trial court entered two judgments. The first judgment was on the directed verdict for Gerry, filed November 28, 1960. The second judgment awarded $5,528.36 to Johnston, and was filed November 30, 1960.

The notice of cross-appeal of Johnston was filed within the sixty day limitation as to the November 30th judgment, but presumptively was not filed within such period of time from the judgment of November 28. This notice of appeal did not designate

that it included the first judgment, however, such notice of appeal was amended to include the first judgment. Gerry filed a motion to dismiss Johnston's appeal as to the November 28th judgment on the grounds that it was not taken timely. Johnston resisted this motion on the ground that the first judgment did not make final disposition of the case and further, that no express determination had been made that the judgment should be entered and that no express direction for entry of the judgment was made by the trial court in compliance with I.R.C.P. 54(b).

■ Under our rules and in the furtherance of orderly administration of justice it is necessary that the trial court make a specific finding that there is no just reason for delay and thereafter expressly direct entry of judgment. Failure to observe this rule precludes the judgment from being final. I.R.C.P. 54(b) is as follows:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."

I. C. Sec. 10–701 defines a judgment:

"A judgment is the final determination of the rights of the parties in an action or proceeding."

■ The judgment of November 28th was not the final determination of the rights of the parties in the case. It was an intermediate determination of a portion of the controversy. In keeping with Rule 54(b) this judgment would be subject to revision and therefore not a final judgment as contemplated in I.C. Sec. 13–201 which authorizes an appeal to this court from a final judgment in an action commenced in a district court.

The motion to dismiss this appeal is denied.

Gerry having taken an appeal from the November 30th judgment we have both parties appealing from the final judgment of the trial court.

Gerry under his assignments of error contends that Johnston's cross-action was one to recover damages for an alleged wrongful revocation of a license to enter the land in question and cut timber. He

asserts that cost of construction of roads is not a proper element of damages in an action for wrongful revocation of a license.

Johnston contends the court erred in directing a verdict in favor of Gerry on the latter's claim for damages for loss of profits, Johnston also urging that he is entitled to bring an action for breach of contract and recover loss of profits which are the natural and proximate consequences of the breach.

The trial court's ruling that Johnston can recover for the cost of construction of roads in an action for wrongful revocation of a license was correct. A parol or simple contract for the sale of growing timber, to be cut and removed from the land by the purchaser does not convey any interest in the land, but is an executory contract for the sale of timber after it shall have been severed from the land. Sorensen v. Jacobson, 125 Mont. 148, 232 P.2d 332, 26 A.L.R.2d 1186; Anderson v. Moothart, 198 Or. 354, 256 P.2d 257. "Such a contract implies a license to enter the lands of the licensor or for the purpose of severing the timber and removing the same." Sorensen v. Jacobson, supra. Such a license is generally held to be irrevocable as to that part of the timber which has been severed from the land in execution of the contract, Gullicksen v. Shadoan, 124 Mont. 56, 218 P.2d 714, 18 A.L.R.2d 1142; 54 C.J.S. Logs and Logging § 29c, p. 730, yet while the contract remains executory the license is revocable at the will of the land owner. Burkhart v. Cartwright, 221 Ore. 26, 350 P. 2d 185; Gullicksen v. Shadoan, supra. The rule that the land owner has the right to revoke a license insofar as it pertains to the executory portion of the contract is subject to limitations. It has been held that if the licensee has made valuable improvements on the land in relying upon the license, to the extent that revocation thereof would amount to perpetration of a fraud the license then becomes irrevocable in the absence of restitution or compensation. Burkhart v. Cartwright, supra; Anderson v. Moothart, supra. It has also been held that where a licensee has made expenditures upon the faith of the license it cannot be revoked at the will of the licensor unless the licensee is placed in statu quo. Williams v. Bisson, 141 Me. 117, 39 A.2d 662; 34 Am.Jur. Logs and Timber § 47, p. 523.

Johnston sought recovery for unallocated expenses incurred for building and improving logging roads on Gerry's land. Gerry had taken Johnston upon the land to see the timber. To harvest the timber so designated it was necessary to build and rebuild certain roads. There was testimony to the effect that sufficient roads had been built on the land in question to enable Johnston to log the balance of the timber on Gerry's land without having to build additional roads. The jury was instructed that

if they found Johnston had built roads in reasonable reliance on the license, Johnston could recover an amount of not more than his unallocated costs. There is no error in this instruction because it pertains to the right of the licensee to recover for damages occasioned by wrongful revocation.

 This court has previously held that damages for breach of a written contract are available to the purchaser of timber against the seller when the seller conveys the land upon which the timber is located to a third person without protecting the rights of the timber purchaser. Bell v. Shields, 18 Idaho 649, 111 P. 1076. In that case Shields sold timber on certain land to Bell. Shields later sold the land to another person without properly protecting Bell's rights to the timber. A subsequent vendee of the land succeeded in enjoining Bell from removing the timber and Bell sued Shields for breach of contract. This Court affirmed the trial court's judgment in favor of Bell, stating: "Under that state of facts, he (Shields) is as liable for a breach of the contract as though he had deliberately refused to comply with it." However, in the instant case the agreement was not in writing. Therefore, insofar as the contract remained executory Johnston's license to enter upon Gerry's lands for the purpose of cutting timber was revocable at will. Gullicksen v. Shadoan, supra; Sorensen v. Jacobson, supra; Anderson v. Moothart,

supra. We conclude that the trial court did not err in holding that Johnston could not recover for loss of profits he alleges he would have received had the license not been revoked.

We have examined all assignments of error and conclude that no reversible error was committed in the trial of the cause.

The judgment is affirmed.

Costs to respondent and cross-appellant.

McFADDEN, TAYLOR and SMITH, JJ., and TOWLES, D. J., concur.